ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. J. H. SMYTHE.

Decided May 4, 1909.

1.—Carriers—Damage to Shipment—Connecting Carriers—Negligence—Presumption—Burden of Proof.

When goods are received in good condition by the initial carrier and delivered by the terminal carrier in a damaged condition, a prima facie case is made against the latter. In such case, in the absence of proof to the contrary, it will be presumed that the loss or damage was caused by the negligence of the terminal carrier; and in order to meet the case so made it devolves upon the terminal carrier to show that the damage did not occur on its line.

**2.—Same—Contract of Carriage—Stipulation against Liability.**

The liability of a common carrier to make compensation for goods or property lost by it, extends at common law not only to the duty imposed upon it by law to safely transport the goods but also to its responsibility to make reparation by way of damages in favor of the owner of the property to the fullest extent fixed and allowed by law in such case; and any agreement that diminishes or destroys its liability in either of these respects is contrary to public policy and void, certainly when the loss is attributable, in the eyes of the law, to the negligence of the carrier. Galveston, H. & S. A. Ry. Co. v. Ball, 80 Texas, 606.

**3.—Same—Limiting Liability.**

When the injuries and damages result from a violation of the contract of shipment growing out of the negligence of the carrier, it can not by contract restrict and limit its liability to less than the damages actually caused by it.

**4.—Same—Foreign Law—Interstate Shipment.**

Where the shipment is interstate and the contract is to deliver the goods in another State, in the absence of proof of the law of such State the courts of this State will presume that it is the same as the law of this State, and will apply the latter in determining whether a stipulation in such contract limiting the liability of the carrier is valid or otherwise.

**5.—Same—Interstate Commerce.**

In the absence of legislation by Congress on the subject, a State may require common carriers, although in the execution of interstate business, to be liable for the whole loss resulting from their negligence, a contract to the contrary notwithstanding; and this is true whether the degree of care and responsibility required by such State is enacted into a statute or results from the rules of law enforced in its courts.

**6.—Contract—Limitation of Liability—Evidence—Effect of.**

Where the contract of carriage contained a void stipulation limiting the liability of the carrier, the plaintiff, by introducing the contract in evidence, did not become bound by the limited liability clause. The contract of carriage being proved by the instrument, the rights, duties and liability of the parties were fixed by law.

**7.—Measure of Damages—Household Goods.**

Where household goods are injured while being transported by the carrier, the measure of damages is the difference in their actual value just prior to and just subsequent to the injury, and not the difference in the market value.

**8.—Damages—Interest—Pleading.**

Where the plaintiff recovers damages for injuries to the goods shipped, legal interest is allowed on the amount as a matter of law, even though it was not asked for in the pleadings.

**9.—Evidence—Foreign Laws—Decisions.**

The decisions of the courts of another State are not admissible in evidence to prove the statutes of such State.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*Terry, Cavin & Mills,* for appellant.—The contract in question being one which was to be performed in the State of California, the laws of that State will control as against the laws of the State of Texas. In fact, the laws of the State of Texas have nothing to do with the respective rights and liabilities of the parties hereto. Chicago, R. I. & P. v. Thompson, 100 Texas, 185; Mexican Nat. Ry. Co. v. Jackson, 89

Texas, 107; Pennsylvania Ry. Co. v. Hughes, 191 U. S., 477; Martin v. Pittsburg & L. E. Ry., 203 U. S., 284.

Plaintiff, having offered and made the contract and limited liability clause as a part of his case, is bound by the effect of same and can not repudiate it now, and plaintiff did introduce in evidence and base liability upon the written contract and limited liability clause. He is therefore estopped from demanding more than is authorized by said contract and limited liability clause.

*Geo. L. Charlton* and *Ewing & Ring,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—Appellee J. H. Smythe instituted this suit against the appellant, Atchison, Topeka & Santa Fe Railway Company, and the Gulf, Colorado and Santa Fe Railway Company, for the recovery of $1,950 as damages growing out of the shipment of a carload of household goods from Houston, Texas, to Los Angeles, California, it being charged in appellee's petition that through the negligence of the carriers the goods were badly damaged in transit.

Appellant pleaded the general issue, and specially pleaded that under the terms of the contract of shipment the liability of each carrier was limited to such loss or injury as occurred on its own line, and that no loss or injury occurred on its line. It further pleaded that under the terms of said contract it was provided that, in case of loss or injury, the amount to be recovered should be based on a valuation of five dollars per hundred pounds; that said contract was legal and valid under the laws of the State of California, where the shipment was delivered, and that five dollars per hundred pounds for such goods as were lost or damaged in transit was tendered to appellee. There were other pleadings filed by the parties, but it is believed that the above will be sufficient to indicate the issues involved.

The case was tried before a jury and a verdict and judgment, based upon special issues, was rendered for appellee and against the appellant, Atchison, Topeka & Santa Fe Railway Company for $1,676.87, of which sum appellee entered a remittitur of $325. Judgment was rendered on the verdict of the jury in favor of the Gulf, Colorado & Santa Fe Railway Company. This appeal is prosecuted by the Atchison, Topeka & Santa Fe Railway Company alone.

The car of household goods in question was shipped to appellee from Houston, Texas, to Los Angeles, California, over the lines of the Gulf, Colorado & Santa Fe Railway Company and the Atchison, Topeka & Santa Fe Railway Company under a through bill of lading, and was delivered by the former to the latter at Purcell, Oklahoma. The goods, at the time of their delivery to the initial carrier, were in good condition and were well packed and braced in the car when loaded at Houston, but before the same reached Los Angeles the goods while in transit were transferred to another car, and when they reached their destination were scattered all around in the car and were badly damaged. There was no testimony to show on what line of railway the damage occurred, and none offered by either carrier to show its freedom from negligence.

At the time of the issuance of the bill of lading by the initial car-

rier the appellee signed a special contract by the terms or which the liability of all carriers concerned in the transportation of the shipment for loss or injury was released or limited to five dollars per hundred pounds of the goods shipped. This contract is as follows:

"Whereas the undersigned consignor has delivered for transportation to Gulf, Colorado & Santa Fe Railway Company at the above station a quantity of household goods, furniture and emigrants' movables, consigned to J. H. Smythe at Los Angeles, described as follows: Car H. H. Goods. And whereas said consignor desires to secure the benefit of the lower or special rate applicable only to such transportation at 'owner's risk' upon the valuation and conditions hereinafter expressed.

"Now, therefore, said railway company agrees to charge for such transportation the lower or special rate applicable to shipments, based on such valuation and the conditions hereinafter stated; and receives said goods for transportation upon the terms herein stated; and said consignor hereby represents and agrees that the value of the above property does not exceed five dollars ($5) per hundred pounds, and that in case of any loss or damage to the same said Railway Company, or any connecting carrier transporting the same, shall not be liable for any greater amount, and that neither said railway company nor any other connecting carrier over whose lines such property may be transported shall be liable for damages to said property by chafing or breaking or from damage of any kind, except such as may occur from negligence of the carrier by collision of trains or by cars being thrown from the track in course of transportation, and that if the property shall pass over the road of another company to reach its destination, the company upon whose road the loss, injury or damage may occur shall alone, if at all, be liable therefor, and the above railway company shall not be liable for any loss or damage thereto or any delay in transportation or delivery thereof by any connecting or succeeding carrier or company; and that no claim for loss of or damage to the above property shall be valid unless presented to the railway company in writing within thirty (30) days after said property shall have been delivered."

It was shown that the freight rate on household goods from Houston to Los Angeles, where the $5 release clause was signed, was $1 per hundred pounds, and where such a contract was not signed the rate was $1.60 per hundred pounds. After appellee received the goods at Los Angeles he wrote to the agent of appellant there as follows:

"Enclosed is a list of the goods damaged and for which I wish to make a claim. Your assistant claim agent was here and examined the damages and has a list also;" then follows a list of articles in which the weight of each is given. Some days later appellee wrote the following letter to appellant's claim agent:

"In reference to your recent request for bill of repairs to furniture damaged in shipment from Houston, Texas, to this city for which claim has been entered by J. H. Smythe, would state that the extent and nature of the damage is such that we have not at the present date felt able to afford to have repairs made.

"A greater part of this furniture was new before shipment, and for this reason special car was chartered in order that it might be shipped without damage. We assume that the furniture, by its appearance and

condition on arrival, had been laying on the prairie for two or three ...... between its transfer from the original car 24117 to car 2810.

"Under these conditions I believe that a settlement could be made under the conditions printed on the waybill, viz., $5 per 100 pounds, and I am anxious to have the matter adjusted as soon as possible." Appellee testified that in giving the weight of the articles he was expecting to get a settlement based on weight.

Appellant's first assignment of error, submitted as a proposition, is as follows: "The court erred in failing and refusing to grant this defendant a new trial on the first ground of its amended motion therefor, which was as follows: The verdict of the jury is contrary to law and against the evidence in this case, in this, the evidence shows without contradiction that prior to the shipment of the goods in question plaintiff entered into a contract with the Gulf, Colorado & Santa Fe Railway Company for the carriage of these goods to the end of its line and there to deliver the same to the next connecting carrier, to wit, this defendant, and that, in consideration of the reduced freight rate which was obtained by the plaintiff the said plaintiff obligated himself that in case of loss or damage to said goods or any part of the same while they were in possession of the carriers, that the amount of said loss or damage should be estimated and based from $5 per cwt. of goods so lost or damaged; that the evidence shows without contradiction that the weight of the goods injured and for which damages were claimed was about 4,465 pounds, and that the plaintiff presented claim for the injuries sustained based upon that contract; that there was never an attempt to repudiate the same until this suit was filed; there is no evidence to indicate that this defendant ever had any notice of any other or different contract, or that any other or additional claim could be made, and the evidence shows without contradiction that plaintiff could not have obtained the rate nor had his goods carried for the amount collected by the carriers except for this reduced valuation. And the evidence further shows that, based upon this contract— and should it even be held that this defendant was liable—that the amount of recovery could not have exceeded $265, and in all these respects the verdict of the jury is against the manifest weight and great preponderance of the evidence." Under this assignment appellant urges the additional propositions, (1) that the contract being one which was to be performed in the State of California the laws of that State will control, and (2) that plaintiff having offered in evidence the contract containing the limited liability clause and made the same a part of his case, is estopped to repudiate the same and to demand more than authorized thereby.

An inspection of the contract in question shows that the carriers attempted by the contract to exempt themselves from liability for all damages due to chafing and breaking of the goods while in the course of transportation; that is to say, it was in the contract provided that neither the initial carrier nor any connecting carrier transporting the goods should be liable for any damages from chafing or breaking in course of transportation, and that they should not be liable for damages of any kind except as might occur by collisions of trains or by

cars being thrown from the track in the course of transportation by reason of the carrier's negligence. All the testimony tends to show that the damage in question was caused by chafing and breaking and there is nothing that tends to prove that the injury was due to collisions of trains or by derailment of.the car. The result of this is that appellant attempted to shield itself by contract from the consequences of its negligence in the very particular which resulted in appellee's damages.

It seems to be well settled by the decisions of the courts of this State that when goods are received in good condition by the initial carrier and delivered by the terminal carrier in a damaged condition, a *prima facie* case is made against the delivering carrier. (Gulf, C. & S. F. Ry. v. Edloff, 89 Texas, 458; Texas & Pac. Ry. v. Adams, 78 Texas, 372.)

In such case, in the absence of any proof to the contrary, it will be presumed that the loss or damage was caused by the negligence of the terminal carrier (Gulf, C. & S. F. Ry. v. Ball, 80 Texas, 606); and in order to meet the case so made it devolves upon the terminal carrier to show that the damage did not occur on its line. (Railway v. Edloff, *supra;* Missouri, K. & T. Ry. v. Mazzie, 29 Texas Civ. App., 295; Missouri Pac. Ry. v. Richmond, 73 Texas, 571; Missouri Pac. Ry. Co. v. China Mfg. Co., 79 Texas, 27.)

The appellee proved facts which established *prima facie* appellant's negligence, and under this proof, unless rebutted, appellee had a right to recover the value of the goods unless the contract limiting the recovery to five dollars per hundred pounds was valid. Was then the stipulation in the contract of shipment so limiting the extent of recovery valid and enforcible? We think the decisions of our courts require an answer to this question in the negative. In Railway v. Ball, above cited, it is held that "The liability of a common carrier to make compensation for goods or property lost by it extends at common law not only to the duty imposed upon it by law to safely transport the goods, but also to its responsibility to make reparation by way of damages in favor of the owner of the property to the fullest extent fixed and allowed by law in such cases. Any agreement that diminishes or destroys its liability in either of these respects would be contrary to public policy and void—certainly when the loss is attributable, in the eyes of the law, to the negligence of the carrier. Southern Pac. Ry. v. Maddox, 75 Texas, 300; Adams Express Co. v. Hoeing, 11 S. W., 205." In Ft. Worth & D. C. Ry. v. Greathouse, 82 Texas, 110, it is said: "We do not deny the privilege of the carrier and the shipper to make contracts fixing the value of the articles shipped that would in some cases be binding and conclusive upon the parties to the contract; but we hold that when the injuries and damages result from a violation of the contract of shipment growing out of the negligence of the carrier, that it can not restrict and limit its liability to less than the true value of the property."

But appellant contends that the shipment in question being an interstate shipment, and the contract in question being valid under the laws of the State of California where delivery was to be made, the laws of that State should control and the contract should be enforced by the courts of Texas. An answer to this contention is that it was

not shown what the laws of California in this regard are, hence in the absence of such proof the courts of this State will presume that they are the same as those in Texas. (James v. James, 81 Texas, 381.)

While Congress under its power may provide for contracts for interstate commerce permitting carriers to limit their liability to a stipulated valuation, it does not appear that Congress has, up to the present time, sanctioned contracts of this nature; and, in the absence of congressional legislation on the subject, a State may require common carriers, although in the execution of interstate business, to be liable for the whole loss resulting from their negligence, a contract to the contrary notwithstanding; and this is true whether the degree of care and responsibility required by any State is enacted into a statute or results from the rules of law enforced in its courts. (Pennsylvania Railroad Co. v. Hughes, 191 U. S., 477.)    Article 320, Revised Statutes, provides in effect that common carriers within the State shall not limit their liability as it exists at common law. Manifectly this statute does not affect contracts made for interstate shipments, nor does it purport to do so. There being then no enactment of Congress or statute of this State controlling, the common law, which prohibits a carrier from making terms which will exempt it from liability for the negligence of itself or its servants, and under which the carrier is an absolute insurer of the goods transported, subject to certain well-defined exceptions, controls. (Texas & P. Ry. Co. v. Richmond, 94 Texas, 575.)    This being true it follows that as under the common law a carrier can not limit its liability for damages caused by its negligence, nor restrict by contract the extent of its responsibility to a less sum than the damages actually caused by it, and as the common law as affecting such matters is in force in this State, the contract in question must be held inoperative and void.

There is no merit in the contention that plaintiff is bound by the limited liability clause of the contract because he made the contract a part of his case and introduced the same in evidence. The contract was introduced to prove a contract of carriage, and this being proved, the rights, duties and liabilities of the parties were fixed by law. It will not do to say that because the instrument offered in evidence to prove the contract also contained a provision limiting the carrier's liability that the plaintiff must be held to the measure of recovery prescribed therein, for to so hold would be but to say that the carrier could in this way restrict its responsibilities and thereby evade the law, which forbids it by contract or otherwise to escape the consequences of its own negligence resulting in damage to a shipment. The assignment is overruled. What we have said disposes adversely to appellant's contention of the second, sixth, seventh and fourteenth assignments of error, all of which are overruled.

The third assignment complains of the submission by the court of the third special issue, which is "to what extent were the goods damaged while in transit?" Appellant contends that in lieu thereof the court should have required the jury to find the difference in the market value of the goods at destination in the condition in which they arrived and the market value of the same had they arrived in good condition and had not been damaged by the negligence of the carrier.

That the measure of damages where household goods in use, such as the evidence showed those in question to be, are injured while being transported by the carrier, is the difference in their actual value just prior to and just subsequent to the injury, and not the difference in the market value, is now too well settled to require discussion. Wells-Fargo Express Co. v. Williams, 71 S. W., 314; Benedict v. Chicago, R. I. & P. Ry. Co., 91 S. W., 811; Texas & Pac. Ry. Co. v. Wilson Hack Line, 46 Texas Civ. App., 38; International & G. N. Ry. v. Nicholson, 61 Texas, 550. The assignment is overruled.

There was no error in allowing interest at the legal rate on the amount of damages sustained by appellee. It seems to be now well settled that such interest is allowed as a matter of law, even though it was not asked for in the pleadings. (Ft. Worth & D. C. Ry. v. Greathouse, 82 Texas, 104; Houston & T. C. Ry. v. Jackson, 62 Texas, 212; Galveston, H. & S. A. Ry. v. Ball, 80 Texas, 602; Gulf, C. & S. F. v. McCarty, 82 Texas, 608.) The assignments raising the point are overruled.

The eighth assignment is not followed by a proper statement as required by the rules and will not be considered.

By its thirteenth assignment appellant complains of the refusal of the court to permit it to prove by the decisions of the Supreme Court of the State of California that under the laws of that State the contract in question was valid. While it may be that the decisions of a sister State are admissible to show its own understanding and interpretation of the common law, it is not clear from the language of the assignment that the decisions offered were intended to show the construction of the common law by the courts of that State as affecting contracts of the character under consideration; but rather that the law referred to, and which it was attempted to be proved in that manner, is a statute which acknowledges the validity of contracts of a carrier which limits its liability as it exists at common law. Our statutes provide that the method in which such proof shall be made is by the introduction of the statute books of the State whose laws are sought to be proved which purport to have been printed under the authority of such State. Rev. Stats., art. 2304. There was no error in refusing to admit the evidence.

We have examined the other assignments presented by appellant for a reversal and are of opinion that there are no reversible errors in any of them. The judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.