In this case appellee sued appellant, alleging that he purchased from the Missouri, Kansas Texas Railway Company, at its office in Oklahoma City, Okla., a railroad ticket entitling him to transportation for himself and his baggage from that point to Dallas, Tex., and that appellant, Missouri, Kansas Texas Railway Company of Texas, is a connecting line of said initial carrier and as such received said baggage from the initial line and failed to deliver same to appellee. The baggage was alleged to consist of a trunk and its contents of the value of $607.35. Judgment for said amount was prayed, etc. Appellant, as applicable to the issues involved in this appeal, by its answer averred that appellee for a fare paid became a passenger at said Oklahoma City upon a connecting line, his destination being Dallas, Tex., but that under the baggage rules and regulations then in force concerning the carriage of passengers and their baggage between said points approved and promulgated by the Interstate Commerce Commission of the United States, and posted in the depot at Oklahoma City in compliance with the orders of said Commission and of which appellee had notice, it was provided, among other things, that, "Unless a greater sum is declared by the passenger and charges paid for increased valuation at time of delivery to carrier, the value of baggage belonging to or checked for an adult passenger shall be deemed and agreed to be not in excess of one hundred dollars, and value of the baggage belonging to or checked for a child traveling on a half ticket shall be deemed and agreed to be not in excess of fifty dollars ($50.00). If passenger, at the time of checking baggage, declares, according to the form prescribed, a greater value than one hundred dollars ($100.00) for an adult and fifty dollars ($50.00) for a child, each one hundred dollars ($100.00) in value, or fraction thereof, above such allowance will be charged for at ten (10) per cent. of the excess baggage rate per hundred (100) pounds, for the distance carried. The minimum rate will be ten (10) cents per hundred dollars ($100.00) and the mimimum charge for increased valuation twenty-five cents (25 cents)." After pleading the quoted rules and regulations, appellant further averred that appellee did not in compliance with said rules make the declaration that his baggage was of a value greater than that adopted as a basis of valuation, nor pay the charges for such increased valuation, and that in the absence of an express declaration to that effect appellee could not recover more than $100. Appellant also pleaded its receipt of the trunk from the connecting carrier, and subsequent delivery to appellee. In reply to the foregoing answer appellee specially demurred to that portion of the same which set out said baggage rules and regulations, because immaterial, irrelevant, and constituting no defense to appellee's cause of action. The demurrer was sustained and said portion of the answer stricken from the record. Upon trial before the jury appellee recovered $400, judgment was entered accordingly, and from which this appeal is perfected.
The evidence upon the trial and the finding of the jury therefrom warrant the following conclusions of fact: Appellee purchased a ticket in Oklahoma City, Okla., from that point to Dallas, Tex., from the agent of the Missouri, Kansas Texas Railway Company, a connecting line of the appellant, Missouri, Kansas Texas Railway Company of Texas, and upon that ticket checked his trunk to Dallas, Tex. The check issued by the original carrier and which evidenced appellee's ownership of the trunk had indorsed thereon: "This duplicate check is to be given the passenger who must present it for baggage immediately upon arrival at destination, to avoid charges for storage. Unless a greater sum is declared by the passenger and charge paid for increased valuation at time of delivery to carrier, the valuation of baggage checked hereon shall be deemed and agreed *Page 1121 
to be not in excess of $100.00 for the whole ticket and $50.00 for a half ticket." The trunk was in fact delivered by the initial line to appellant and by appellant delivered to its officers at its station, in Dallas, Tex. Appellant's agents failed to deliver the trunk to appellee when demanded. The contents of the trunk consisted of the personal wearing apparel of appellee, except as hereinafter particularly mentioned.
Appellant first complains of the court's charge wherein the court instructed the jury that if appellee was entitled to recover at all the measure of his damages was such an amount as they should determine from the testimony to be the value of the trunk and its contents the day of its conversion or loss by appellant. Appellant contends the charge as given was erroneous for the reason that the true measure of damages in such cases is the market value of the trunk and its contents on the date of its conversion or loss. The measure of damages for injury or damage to household furniture, wearing apparel, etc., has been repeatedly stated by the appellate courts of this state to be the difference in the actual value of the same just prior to the damage or injury and the actual value thereof just subsequent thereto; and that the proper method of arriving at their value at the time of the injury or damage is to take into consideration the cost of the articles, the extent of their use, whether worn or out of date, and their condition at the time, etc. Wells Fargo Express Co. v. Williams, 71 S.W. 314; Railway Company v. Seale,28 Tex. Civ. App. 364, 67 S.W. 437; Benedict v. Railway Company, 91 S.W. 811; Railway Company v. Smythe, 55 Tex. Civ. App. 557,119 S.W. 892; Railway Company v. Nicholson, 61 Tex. 550; Railway Company v. Colquitt (Sup.) 9 S.W. 603; Barker v. Lewis, Storage Trans. Co., 78 Conn. 198, 61 A. 363, 3 Ann.Cas. 889, and note. And we think it clear that the measure of damages recoverable for similar articles in case of conversion, loss, or appropriation would be the actual value of the same at the time of such conversion, loss, or appropriation; such value to be arrived at in the manner we have just stated. While the charge of the court does not tell the jury that the actual value of the articles may be recovered, but in lieu thereof confines the jury to the value of the same, a term favorable perhaps to appellee, and while it omits to state the manner by which such value may be arrived at, appellant nevertheless makes no complaint on that score, nor did it request any amplification thereof by special charge, and, the charge being correct as far as it went, the assignment presents no error.
Neither would it have been correct, as urged by appellant, to have permitted its witness to testify that the articles had a market value as secondhand articles, and to prove such secondhand value, since to do so would have served the purpose of establishing a measure of recovery at variance with the settled rule in such cases. As said in Wells Fargo Express Co. v. Williams, supra: "Such a value would depend largely on considerations which would have nothing to do with the intrinsic value of the articles, or their actual worth to the owner."
The third assignment of error complains of the action of the court in sustaining the special demurrer of the appellee to that portion of the answer setting out the baggage rules and regulations promulgated by the Interstate Commerce Commission; and the fourth assignment complains of the refusal of the court to permit it to prove under said allegation the approval and promulgation by the Interstate Commerce Commission of the said rules and to prove by the witness Stridey that the same were kept on file in the ticket office of the initial carrier in Oklahoma City and notice thereof posted in said office in view of any one desiring to read the same; and by authority of said assignments asserts the proposition that by the Act of Congress of June 29, 1906, c. 3591, § 7,34 Stat. 593 (U.S. Comp.St.Supp. 1911, p. 1307), commonly and conveniently known as the "Carmack Amendment," under authority of which the Interstate Commerce Commission approved and promulgated the rules and regulations stricken from appellant's pleading and proof thereof excluded on objections by appellee, appellee could recover only the amount therein agreed upon as the value of said baggage in the absence of any declaration fixing a greater value on the contents of the trunk. Under the law of this state it is well settled that common carriers cannot by inserting such conditions in its bills of lading, receipts, etc., limit the shipper in case of loss, damage, or destruction, to values therein "agreed" on or "declared," but must pay the actual value or the market value as may be determined by the rule of the state as applied to the article lost, damaged, or destroyed. It is as well settled that Congress may regulate commerce between the states, and when laws are passed by Congress, and the construction placed thereon by the federal courts is in conflict with the state laws and the construction of its courts, the rule in the states must yield, since when Congress does assume the control of such matters its rights, policies, laws, and the construction placed thereon by the federal courts having jurisdiction Is exclusive. The citation of authority in either case is unnecessary. In the instant case it is undisputed that the shipment of the trunk was from a point in the state of Oklahoma to a point in the state of Texas, and hence an interstate transaction. By the answer of the appellant it was urged that acting under the Carmack Amendment the Interstate Commerce Commission, whose duty and function is, among other things, to *Page 1122 
approve or promulgate rules and regulations concerning the transportation of the baggage of passengers on railroad lines, had approved and promulgated the rules and regulations set out in the pleading referred to by us in another place. It not being disputed that appellee was an interstate passenger, it seems clear to us that appellant was entitled to plead and prove that the Interstate Commerce Commission had in fact approved and promulgated the rules and regulations set out in the appellant's answer for the reason that the Supreme Court of the United States has by recent decisions upheld and enforced limitations upon the amount recoverable in similar cases when the passenger fails to declare the value of the article transported.
The case of Adams Express Co. v. Croninger, 226 U.S. 491,33 Sup.Ct. 148, 57 L.Ed. ___, is, in our opinion, decisive of the issue we are discussing. In that case Croninger delivered to the express company in Cincinnati, Ohio, a package containing a diamond ring of the value of $125, consigned to a customer in Augusta, Ga. The ring was never delivered, and Croninger sued for the value of same and recovered verdict for $137.52, which represented the value of the ring and interest. The express company answered the demand for judgment by the plea that the shipment was interstate commerce within the law enacted by Congress and that it had, in obedience to certain rules prescribed by the Interstate Commerce Commission, filed certain schedules of rates for the transportation of articles by express between Cincinnati and Augusta, which provided, among other matters, that, if the shipper failed to declare the actual value of the article shipped, the rate to be charged would be based upon a value of $50, and that the bill of lading issued to Croninger provided that the express company should be liable for no greater sum than $50, unless a greater value was declared by the shipper and the increased rate provided for the greater value paid by the shipper. The court, after elaborately discussing the exclusive right of the federal government to regulate all phases of interstate commerce and the liability of common carriers under the Carmack Amendment and the conflict between state and federal regulations with reference to such liability, takes up the question of the right of such common carriers to limit their liability by requiring the shipper to state the value of the article shipped. The court say: "We come now to the question of the validity of the provision in the receipt or bill of lading limiting liability to the agreed value of $50, as shown therein. This limiting clause is in these words: `In consideration of the rate charged for carrying said property, which is regulated by the value thereof, and is based upon a valuation of not exceeding $50.00 unless a greater value is declared, the shipper agrees that the value of said property is not more than $50.00, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than $50.00 if no value is stated herein.' The answer states that the schedules which the express company had filed with the Interstate Commerce Commission showed rates based upon valuations; and that the lawful and established rate for such a shipment as that made by the plaintiff from Cincinnati to Augusta, having a value not in excess of $50, was 25 cents, while for the same package, if its value had been declared to be $125, the amount for which the plaintiff sues as the actual value, the lawful charge, according to the rate filed and published, would have been 55 cents. It is further averred that the package was sealed, and its contents and actual value unknown to the defendant's agent. That no inquiry was made as to the actual value is not vital to the fairness of the agreement in this case. The receipt which was accepted showed that the charge made was based upon a valuation of $50 unless a greater value should be stated therein. The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the Commission. That presumption is strengthened by the fact that across the top of this bill of lading there was this statement in bold type: `This company's charge is based upon the value of the property, which must be declared by the shipper.'" Proceeding, the court further say: "That a common carrier cannot exempt himself from liability for his own negligence or that of his servants is elementary. * * * The rule of the common law did not limit his liability to loss and damage due to his own negligence, or that of his servants. That rule went beyond this, and he was liable for any loss or damage which resulted from human agency, or any cause not the act of God, or the public enemy. But the rigor of this liability might be modified through any fair, reasonable, and just agreement with the shipper which did not include exemption against the negligence of the carrier or his servants. The inherent right to receive a compensation commensurate with the risk involved the right to protect himself from fraud and imposition by reasonable rules and regulations, and the right to agree upon a rate proportionate to the value of the property transported. It has therefore become an established rule of the common law, as declared by this court in many cases, that such a carrier may, by a fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value, made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk. * * * Neither is it conformable to plain principles of justice *Page 1123 
that a shipper may understate the value of his property for the purpose of reducing the rate, and then recover a larger value in case of loss. Nor does a limitation based upon an agreed value for the purpose of adjusting the rate conflict with any sound principle of public policy." See Railway Company v. Harriman Bros., 227 U.S. 657, 33 Sup.Ct. 397, 57 L.Ed. ___, decided March 10, 1913, and Wells Fargo Ex. Co. v. Neiman-Marcus Co., 227 U.S. 469, 33 Sup.Ct. 267, 57 L.Ed. ___, decided February 24, 1913; also, Pacific Ex. Co. v. Ross, 154 S.W. 340.
Much more is said in the opinion of the court in the Croninger Case which it is impracticable to discuss or include in this opinion, but it will be seen by an examination of the facts in that case that there is no escape from the conclusion that the instant case comes sharply within the rules there announced. The check or receipt issued by appellant's connecting line recited that unless a greater sum was declared by appellee and the charge for such increased valuation paid, the value of the baggage was agreed to be not in excess of $100, while the rules and regulations set out in appellant's answer contained the same provisions amplified. The difference in the facts disclosed by the pleading in the instant case and the facts in the Croninger Case is that in the latter case the receipt or bill of lading contained the provision "that the company shall not be liable in any event for more than the value so stated, nor for more than $50.00, if no value is stated," while in the instant case there is no express provision with reference to liability. But it occurs to us that, since the agreement as to value is conclusive upon the shipper as held by the Supreme Court of the United States, such agreement would necessarily preclude any claim for a greater liability than the agreed valuation and to hold otherwise it seems to us would be to run counter to the spirit of the rules and regulations pleaded and the decision in the Croninger Case. Accordingly, we think for the reasons stated that the court erred in sustaining the demurrer to that part of the answer which pleads the baggage rules and regulations and also erred in excluding the proof of their approval and promulgation by the Interstate Commerce Commission, as well as the testimony of the witness Stridey.
We are unable to agree with appellee's counsel in connection with what we have just said that the admission of appellant that the trunk was actually received and delivered to appellee makes the contract for safe transportation and delivery any the less an interstate transaction. The jury found by its verdict that appellant did not deliver the trunk to appellee, and, that being the case, the contract between appellee and appellant's connecting line is what must determine the obligations and liability in case of loss, etc.
The sixth assignment complains of the refusal of the court below to permit appellant to introduce evidence that appellee was a gambler and had in his trunk, in addition to the articles sued for, a complete gambler's outfit, and under said assignment the proposition is asserted that the testimony was admissible as bearing upon the credibility of the witness. The court did not err in excluding the evidence sought to be introduced. It is said in Tipton v. Thompson, 21 Tex. Civ. App. 143, 50 S.W. 641, which was a suit by Mrs. Tipton to recover from Thompson and his sureties on his liquor dealer's bond the penalty prescribed by statute for the sale of liquor to her husband, that in such suit evidence relating to the reputation of Mrs. Tipton for chastity was not admissible for any purpose since her chastity was not an issue in the case. So in the instant case whether appellee was a gambler or had in his trunk a gambler's outfit was not an issue, nor could such proof have collaterally or circumstantially established any issue in the case. His character or morals were an issue only so far as it related to the truth of his testimony concerning the existence, ownership, and value of the articles sued for; and in that respect it is of course well settled that it would have been proper to have inquired into appellee's general reputation for truth and veracity since he had testified in his own behalf. Appellee was not assailed however in that respect. See Price v. Wakeham, 48 Tex. Civ. App. 339,107 S.W. 133, decided by this court and much in point.
In accordance with the views herein expressed, this case is reversed and remanded for trial alone on the issue of whether or not the rules and regulations pleaded by appellant have in fact been approved and promulgated by the Interstate Commerce Commission, together with proof of any other fact bearing alone upon the regulations and rules of the Commission as applied to this proceeding. As to the other issues raised by appellant, and herein discussed by us, the judgment of the court below is in such particulars affirmed.
Reversed and remanded in part; affirmed in part.