BENJAMIN MOORE & COMPANY, Plaintiff, *v.* THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant.

(Supreme Court, Kings Special Term, January, 1919.)

Actions — who may maintain, in state courts — carriers — interstate commerce — jurisdiction — when motion to dismiss denied — stay — provisions of act of Congress approved March 21, 1918, chap. 25, § 10.

The act of Congress approved March 21, 1918, chapter 25, which provides for the administration of transportation systems under Federal control, was not intended to authorize the president or his agent or agents to make orders affecting the jurisdiction of the state courts or affecting the right to maintain actions therein.

The provision of section 10 of said act of Congress, which declares that " Carriers while under Federal control shall be subject to all laws and liabilities as common carriers  *  *  * except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such Federal control or with any order of the President," must be construed to be wholly prospective in its operation and to affect only liabilities arising after said act took effect; it was not intended by this legislation either to extinguish or impair vested rights of action or to authorize the president or his agent or agents so to do.

At the time of the commencement of the present action brought by a New Jersey corporation to recover damages to property shipped in part over the line of defendant, a Kansas corporation, from a point in California to a point in the state of New Jersey, the defendant being the initial carrier and subject to suit under the Interstate Commerce Act irrespective of whether the damage occurred on its line or on that of a connecting carrier, plaintiff was confronted with this situation:   The two-year limitation provided by the bill of lading pursuant to the Interstate Commerce Act was about to expire, and there was no officer of defendant in New Jersey upon whom service of process could be made, and, having no knowledge upon the subject nor means of ascertaining in which county or district the cause of action arose, plaintiff was debarred from bringing suit in either of the jurisdictions specified in general order No. 18 of the United States director general of railroads, as modified by general order No. 18A, which provides that actions against carriers while under Federal control must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action, or in the county or district where the cause of action arose.  Both of the parties to the action have offices in New York for the transaction of business. *Held,* that a motion to dismiss the action on the ground that it was brought contrary to said order of the director general must be denied as it was beyond his power as agent of the president to make an order whereby plaintiff's existing right of action would be extinguished or cut off.

*Held,* further, that the motion, so far as it asked for a stay of proceedings, must be denied upon the ground that facts were not set forth to show that the just interests of the government would be prejudiced by the trial of the action in the courts of this state.

Motion to dismiss action or in the alternative for a stay of proceedings.

A. S. H. Bristow, for motion.

Jacob H. Shaffer and Cornelius A. Baldwin, in opposition.

Benedict, J. Defendant seeks by this motion to have this action brought against it as a carrier dismissed, because, as is claimed, it was brought contrary to the provisions of general order No. 18 of the United States director general of railroads, as modified by general order No. 18A, which provides that actions against carriers while under Federal control must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action, or in the county or district where the cause of action arose.

In the present case, the action is for damages to property shipped in part over the defendant's line from San Francisco, California, to a point in the state of New Jersey, the defendant being the initial carrier, and, therefore, subject to suit under the Interstate Commerce Act, irrespective of whether the damage occurred on its line, or on the line of some connecting carrier. The plaintiff is a New Jersey corporation, and the defendant a Kansas corporation. At the time suit was brought, plaintiff was confronted with this situation: The two-year limitation provided by the bill of lading pursuant to the Interstate Commerce Act was about to expire. The defendant had no officer in New Jersey upon whom process could be served; and plaintiff did not know, and had no means of ascertaining, in what county or district the cause of action arose. Plaintiff was, therefore, debarred from bringing suit in either of the jurisdictions specified in the

order of the director general, and yet it must bring suit within a very short time or its action would be barred by the contractual limitation. It accordingly brought suit in New York, where both corporations had offices for the transaction of business.

The power of the president to take control of transportation systems when the nation is at war is derived from the act of Congress, entitled "An Act making appropriations for the support of the Army for the fiscal year ending June thirtieth, nineteen hundred and seventeen, and for other purposes," approved August 29, 1916. Section 1 of chapter 418 of that act authorizes the President in time of war to take possession and assume control of transportation systems "for the transfer or transportation of troops, war material and equipment, or for such purposes connected with the emergency as may be needful or desirable." Pursuant to this provision, the president, on December 26, 1917, issued a proclamation assuming control of all systems of transportation in the United States, and designating one William G. McAdoo as director general of railroads.

The power to make the order in question is claimed to be derived from the act of Congress approved March 21, 1918, chapter 25, which provides for the administration of transportation systems under Federal control. Section 1 of such chapter authorizes the president to agree with each carrier relative to compensation for the use of its system and "in such agreement to make all other reasonable provisions" not inconsistent with the act or with the act of August 29, 1916, "that he may deem necessary or proper for such Federal control or for the determination of the mutual rights and obligations of the parties to the agreement arising from or out of such Federal control." The same section also prescribes that the agreement shall

provide " that the carrier shall accept all the terms and conditions of this act and any regulation or order, made by or through the president under authority of this act " or of that portion of the act of August 29, 1916, authorizing the president to take control of transportation systems in time of war. It is further provided by the act of March 21, 1918, in section 8 of chapter 25, that " The President may execute any of the powers herein and heretofore granted him with relation to Federal control through such agencies as he may determine  *  *  *.".

Pursuant to this provision, the president, on March 29, 1918, issued a proclamation authorizing the said director general to agree with the carriers relative to compensation and other matters and " to issue any and all orders which may in any way be found necessary and expedient in connection with the Federal control of systems of transportation," etc. Under this authority, the director general issued the order in question, the effect of which, as applied to the situation involved in the present case, will apparently be to cut off plaintiff's right of action altogether, as already set forth.

The provisions above referred to conferring general power on the president to make orders and regulations (see Act of March 21, 1918, chap. 25, § 1) seem to have been intended to authorize only orders and regulations effective and binding upon the carriers, and not upon other persons, for it is expressly stated that the agreements relative to compensation shall contain stipulations binding the carriers to accept such orders.

The act contains, however, provisions especially relating to actions against carriers under Federal control. They read as follows: " Carriers while under Federal control shall be subject to all laws and lia-

bilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government. Nor shall any such carrier be entitled to have transferred to a Federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the Federal control of such carrier; and any action which has heretofore been so transferred because of such Federal control or of any Act of Congress or official order or proclamation relating thereto shall upon motion of either party be retransferred to the court in which it was originally instituted. But no process, mesne or final, shall be levied against any property under such Federal control.'' Act of March 21, 1918, chap. 25, § 10 in part.

These provisions seem to confer by implication the power to make orders binding upon those having rights of action against carriers, but there is nothing to indicate that it was intended that such provisions should be retroactive, or authorize the extinguishment of vested rights. The first sentence of the paragraph above quoted, the only one which in any way refers to orders of the president, must be construed, I think, to be wholly prospective in its operation, and to affect only liabilities arising subsequent to the taking effect of the act. Congress did not, in my opinion, intend by this legislation either to extinguish or impair vested rights of action or to authorize the president or his agent or agents to do so.

The president and his agents had, therefore, no power to make any order whereby a right of action already existing would be extinguished or cut off. If such be the effect of general order No. 18 as amended, then I must hold that it was, to that extent, an order beyond the power of the director general, as the agent of the president, to make.

Furthermore, a reading of the paragraph above quoted leads to the conclusion that Congress did not intend to authorize the president or his agent or agents to make orders affecting the jurisdiction of the state courts, or affecting the right to maintain actions therein, since it is expressly provided, without qualification of any kind, that actions at law and suits in equity may be brought against carriers and judgments rendered '' as now provided by law.''

The orders of the president mentioned in the first sentence of the paragraph seem to be those affecting liability.

If the delegation of power to the executive branch of the government be valid, a question which I do not decide, the president or the director general may make orders affecting liabilities to arise in future. But once a liability arises, it may, by express command of the statute, be prosecuted in the same manner it could have been had the statute not been enacted.

I have not considered the question of the power of Congress to take the subject-matter out of the jurisdiction of this court; but as it is a matter of interstate commerce, as to which Congress has plenary powers, I am inclined to think that Congress can do so; but I am more doubtful as to whether Congress could delegate any such power to any executive officer or body. It is, however, unnecessary to decide these questions.

The motion, so far as it seeks a dismissal of the action, must, therefore, be denied.

The motion, in so far as it seeks a stay of the trial under general order of the director general of railroads, No. 26, must also be denied, because facts are not set forth to show that the just interests of the government would be prejudiced by the present trial of the suit in New York.  The allegations of the moving affidavit are too vague and indefinite to warrant the granting of this relief.   The names and residences of the alleged witnesses are not stated; and if in fact they live without the state of New York, it is not shown why their testimony could not be taken by commission. Nor is it shown why, even if they were to be required to travel long distances to attend in person, the interests of the government would in present circumstances be prejudiced thereby, nor why any witness living at a great distance from New York city could not attend a trial there quite as easily as in New Jersey, in which state concededly plaintiff might have sued had there been any officer of the defendant there on whom process could have been served.

Motion denied, with ten dollars costs.