ILLINOIS CENT. R. CO. v. RYAN.
(No. 6238.)

(Court of Civil Appeals of Texas. San Antonio. June 14, 1919. Rehearing Denied June 30, 1919.)

1. RAILROADS ☖⇒5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—ACTIONS—CONTINUANCE—DISCRETION.

Refusal to continue trial in action against railroad instituted in Texas for injuries sustained in Illinois, upon application therefor based upon order of Director General of Railroads No. 26, was discretionary with court.

2. RAILROADS ☖⇒5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—ACTIONS—DISCRETION—CONTINUANCE.

In view of Act Cong. March 21, 1918, § 10 (U. S. Comp. St. 1918, § 3115¾j), court did not abuse its discretion in refusing a third continuance of action against a railroad instituted in Texas for injuries sustained in Illinois, notwithstanding order of Director General of Railroads No. 26, where suit had been brought before railroads were placed under Director General's control.

3. EXECUTION ☖⇒55—CUSTODIA LEGIS.

No judgment may be executed against or possession disturbed, where property is in custodia legis.

4. EVIDENCE ☖⇒161(2)—STATUTES OF ANOTHER STATE.

Under Rev. St. 1911, art. 3692, the statutory law of another state can be proved only by introducing in evidence the authorized printed statutes.

5. EVIDENCE ☖⇒161(2) — LAWS OF OTHER COUNTRIES—TESTIMONY OF LAWYERS.

Laws of foreign countries may be proved by the testimony of lawyers.

6. EVIDENCE ☖⇒89—LAWS OF OTHER STATE—COMMON LAW.

To overcome presumption that the construction of the common law of another state is the same as that in state in which action is brought, the construction of the other state must be pleaded and proven.

7. EVIDENCE ☖⇒517—LAW OF OTHER STATE—EXPERT TESTIMONY.

The unwritten, common, or case law of another state, the sources in which it may be found and mode of its application, may be established by expert testimony of lawyer engaged in practice in such state.

8. APPEAL AND ERROR ☖⇒1056(6)—REVIEW—HARMLESS ERROR.

In action in Texas for injuries sustained in Illinois, exclusion of defendant's expert testimony as to law of Illinois was harmless, where under the findings defendant was liable even under the law as it would have been testified to by such witnesses.

9. APPEAL AND ERROR ☖⇒931(1)—REVIEW—FINDINGS.

Court's findings, where not challenged, will be taken as true on appeal.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by Virgil Ryan, by next friend, against the Illinois Central Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Hicks, Phelps, Dickson & Bobbitt, of San Antonio, for appellant.

J. D. Childs and J. J. Sweeney, both of San Antonio, for appellee.

COBBS, J. This suit was filed in the Seventy-Third district court on the 27th day of November, 1917, but tried upon an amended original petition filed herein on the 18th day of April, 1918.

The suit is against the Illinois Central

Railroad Company, incorporated under the laws of Illinois, alleged to be doing a railroad business in the state of Texas with an office in San Antonio, where it maintains an agent or representative.

"This suit was filed by appellee, Virgil Ryan, by his father, Charles E. Ryan as next friend, * * * to recover damages in the sum of $3,-000 for personal injuries alleged by plaintiff to have been received through the negligence of the defendant in the town of Minonk, Woodford county, Ill., on or about the 11th day of November, 1910, by being thrown or jarred from an oil tank car on which plaintiff was playing at the time a train of appellant coupled on to a string of cars of which the oil tank car was a part.

"The plaintiff alleged that he was a child of only nine years of age, and that the defendant allowed the cars to stand at different times on the track in question, and on a place frequently used by pedestrians as a footway and near a crossing, and that children had constantly and notoriously played on the right of way and standing cars of the defendant under circumstances calculated to induce the children, including plaintiff, to believe that their presence on said premises was permitted by defendant.

"Plaintiff also alleged the negligence of the defendant to be in failing to ring a bell or sound a whistle of the locomotive, and in operating the train at a high rate of speed, contrary to a city ordinance of said city or town, and in bumping into said train of cars, knowing that plaintiff was thereon, and in a position of danger.

"Appellant, who was defendant below, answered by general and special exceptions, by a general denial, and specially pleaded, in substance, that the tank car from which plaintiff fell was at the time standing in the railway yards and on the private premises of defendant, and that the plaintiff had no business thereon, and was a trespasser thereon under the laws of the state of Illinois.

"The appellant further specially pleaded the laws of Illinois with respect to the mutual duties and obligations of plaintiff and defendant, and also alleged specially an ordinance of the city or town of Minonk making it a penal offense for any one, not having business thereon, to board any standing or moving car without permission, within the limits of said city or town.

"When the case was called for trial, and prior to announcement therein, appellant presented to the trial court a motion or application of the defendant for a postponement of the trial of this cause during the period of federal control of the defendant in accordance with a proclamation of the Director General of Railroads, known as General Order No. 26 with respect to the trial of cases filed in courts far removed from the counties where the accidents occurred, and whose trial would result in the taking of railway employés off their trains, which were then urgently needed for the transportation of men and munitions in the prosecution of the war.

"The motion or application was verified by the assistant general manager of defendant, and the allegations thereof were not denied or controverted by plaintiff. The court overruled this motion or application. Thereupon appellant filed a regular motion for a continuance under the terms of the statute of Texas. This motion was also overruled. The defendant excepted to the action of the court in both instances in overruling said motions, and presented its bills of exceptions, which were duly allowed.

"The defendant thereupon presented its plea in abatement, setting up the right of appellant to have the cause continued during the period of federal control, under the terms of the proclamation above mentioned. This plea was also overruled, to which defendant excepted.

"Thereupon the case was tried before the court without a jury, and the court rendered its judgment in favor of the plaintiff and against appellant for the sum of $3,000, the full amount sued for, together with all costs of court. To this judgment of the court the appellant then and there in open court excepted.

"In due time appellant filed its motion for a new trial, which was by the court heard and overruled, to which action of the court the appellant then and there in open court excepted and gave notice of appeal, and in due time filed its appeal bond, bringing the cause to this court."

The appellant's first, second, third, fourth, fifth, sixth, and seventh assignments all are practically to the same effect, complaining of the supposed error of the trial court in not postponing or continuing, and not sustaining plea in abatement, raising the issue that said railroad by the authority of the President of the United States, known as General Order No. 26 of the Director General of the United States, alleging that the just interests of the government of the United States would be prejudiced by the trial of this cause at the then present term of court, and the trial court should have postponed said trial during the period of federal control. And upon overruling the application for continuance, the court indorsed on appellant's bill of exception No. 2, as follows:

"The court allows this bill of exception No. 2 with the following qualifications:

"(1) The court qualifies it with the same qualifications as used in qualifying the preceding bill of exception No. 1, which may be considered as qualifications of this bill.

"(2) The court also finds that this is the third application of the defendant for a postponement or continuance of this cause, and as such it does not conform to our statutory requirements, and the court, although having other reasons, does not deem it necessary to here state them."

[1, 2] The reasons given by the court indorsed on bill of exceptions No. 1, are too lengthy to insert, but seem to be conclusive and the refusal to continue was within the discretion of the court, which was not abused, and the showing was not sufficient to sustain the motion.

[3] We have examined the orders issued by the Director General, and there is nothing there to indicate he contemplated or intended to interfere with the jurisdiction and orderly

procedure of courts of competent jurisdiction or the rights of litigants to have their day in court. Of course no judgment may be executed against or the possession of the government in any manner be disturbed. This is true in every case where property is in custodia legis. This suit was instituted prior to the possession and control by the government of the railroads, through the Director General of the United States, to which he has not become or been made a party. It, therefore, in no manner disturbs him or requires him to take notice thereof or concern himself with respect thereto in any manner whatever, unless an effort should be made to disturb the possession. But we fail to see how the court in this issue did anything contrary to the wishes and directions of the Director General. It could not at that time, by forcing the trial, cause serious interference with the physical operation of railroads under the control of the government.

Section 10 of the act of March 21, 1918 (chapter 25 [U. S. Comp. St. 1918, § 3115¾ j]) provides, among other things:

"Carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or common law, except in so far as may be inconsistent with the provisions of this act," etc.

It provides that suits may be brought, and judgments rendered. It provides:

"No defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. * * * But no process, mesne or final, shall be levied against any property under such federal control."

We do not think the court erred in his ruling. For the support of our views, where the same question is discussed and decided against appellant's contention, see El Paso & S. W. Ry. Co. v. Lovick, 210 S. W. 283; Railway v. Steel, 180 Ky. 290, 202 S. W. 878; Moore v. Railway, 106 Misc. Rep. 58, 174 N. Y. Supp. 60, in January, 1919. This last book cited is not before us, but seems entirely in point as copied in appellee's brief. We do not think the case of Rhodes v. Tatum, 206 S. W. 115, and Wainwright v. Penn. Ry. (D. C.) 253 Fed. 459, and other cases cited by appellant, are to the contrary of what we hold.

We overrule the above-named assignments.

Appellant's eighth and ninth assignments of error and propositions thereunder allege as error the action of the court in excluding the answers of Weymouth Kirkland and Robert J. Slator, attorneys, practicing in the state of Illinois, whose testimony, as expert witnesses, was offered to prove the construction placed upon the common law by the courts of Illinois, with reference to the duty of railroads, especially in regard to persons, other than employés, on the premises and on standing or moving freight cars of such railway companies.

The court excluded the testimony of both witnesses on the subject and appellant preserved proper bills of exception, upon which the court made qualifications. It was shown there was no statute in Illinois on the subject. The court made the following qualification on the bill:

"The court allows this bill of exception No. 4, with the following qualifications in addition to the objections stated above in this bill as offered by plaintiff at the trial of this cause:

"(1) The court finds from the evidence introduced at the trial that the servants and employés of defendant who were at the time operating said train before bumping into the empty string of cars standing on the side track discovered and knew of the presence of the minor plaintiff on the tank car in a position of peril in time to have stopped said train and avoided bumping into the cars on the side track and prevented the injury to plaintiff by the exercise of ordinary care after being apprised of plaintiff's peril, and notwithstanding after being so apprised and knowing of plaintiff's peril the said servants and operatives of defendant's said train at said time and place deliberately, wrongfully, wantonly, unlawfully, negligently, and with gross carelessness bumped into said standing cars, and thereby proximately caused plaintiff's injuries as alleged in plaintiff's petition; therefore the court deems the proposed proof of the laws of Illinois immaterial, in view of the issues as made in this case.

"(2) The court has other reasons for its ruling, which it is not deemed necessary to here enumerate."

[4] Our statute (article 3692) provides that printed statutes under the authority of any state will be received in evidence in our courts, and there is no other way by which to prove the statutory laws of any other state. It was held in A., T. & S. F. Ry. Co. v. Smythe, 55 Tex. Civ. App. 557, 119 S. W. 892, that the decisions of the Supreme Court of a state are not admissible to prove the laws of that state. Proof is to be made by the introduction of the statute books of the state. It is held in Lamb v. Hardy (Sup.) 211 S. W. 445, that the construction of the common law in a particular state may be proven by introducing the decisions themselves.

It is held in Pacific Express Co. v. Pitman, 30 Tex. Civ. App. 628, 71 S. W. 313:

"The question of the construction of the Illinois statute by the courts of that state was not considered when the case was here before. Nor could it, for that matter, be considered on the present appeal, for the reason that we cannot take judicial notice of the particular construction given a statute in another state. To enable us to do this for the purpose of revising the judgment on account of such matter, the evidence of such construction as well as the statute itself, ought to appear in the statement of facts. The cases cited by appellant as construing such statute are Railway Co. v. Si-

mon [160 Ill. 648] 43 N. E. 596; Railroad Co. v. Carter [165 Ill. 570] 46 N. E. 375" [36 L. R. A. 527]; Burdict v. Missouri, Pacific R. Co., 123 Mo. 221, 27 S. W. 453, 26 L. R. A. 387, 45 Am. St. Rep. 528.

[5] In regard to the proof of the laws of foreign countries, it is well established that it may be done by the testimony of lawyers. Sierra Madre Const. Co. v. Brick, 55 S. W. 522. See McKelvey on (opinion) Evidence, § 137, and cases cited.

[6, 7] There is no statute in the state of Illinois upon the subject. To bind our courts by the construction placed upon the common law in that state to overcome the presumption that the construction is the same there as here it must be pleaded and proven. The rule is laid down in Ruling Case Law, vol. 11, § 23, p. 596:

"When the question is one of unwritten, common, or case law, expert evidence is always admissible to prove either what the law is, or the sources in which it may be found, and the mode of its application. The usual source of such expert testimony is a lawyer engaged in practice in the state in question" and citations. Lawson on Expert and Opinion Evidence (2d Ed.) p. 55 et seq.; Abbott's Trial Evidence (2d Ed.) § 22. p. 109, and notes; Jackson v. Jackson, 82 Md. 17, 33 Atl. 317, 34 L. R. A. 773; P. & N. T. Ry. Co. v. Evans-Snyder Buel Co., 100 Tex. 191, 97 S. W. 466.

[8] But from the view we take of the question no injury resulted from the ruling, for it appears from appellant's contention and his bill of exception and the finding and ruling of the trial court that the error was harmless, for the reason that the findings of fact made by the trial court show that the defendant is liable for the injuries suffered by plaintiff even though the law as contended for and sought to be proven should be applied to such findings.

In bill of exception No. 12, complaining of the exclusion of the deposition of Robert J. Slator, who, among other things, would have sworn:

"It would be necessary to show that he was on or near the track or car, in danger of being injured, that he was seen by the person in charge of the train by which he was injured, and that after he was so seen his conduct was such that such employé of the company should have known he did not understand and appreciate his danger, and, after discovering that fact, made no effort to avert the injury, but recklessly and wantonly inflicted it."

And that part of the testimony of Weymouth Kirkland excluded, complained of in bill of exception No. 6, in part was:

"A person who is on the tracks or on the right of way of the company by mere sufferance or passive acquiescence on the part of the company, and without objection on the company's part, and who is not there on the company's business, is also a trespasser.

"The law of Illinois makes no distinction between the duty that the railroad company owes an adult trespasser and that owed to a minor trespasser; in neither case does the company owe them any duty. The only thing that the law requires of the company is that it refrain from willfully and wantonly injuring either of them. The law of Illinois makes a distinction between the degree of care that a minor must exercise and that which an adult must exercise; but there is absolutely no distinction as far as the care of a defendant is concerned."

Appellant in the seventeenth assignment of error complains that the court erred because it nowhere appears from the testimony that at the time the train of defendant coupled on to the standing cars employés of said train knew that plaintiff was on said tank car, or knew that if he was on said car that he was in a position of danger. And in the eighteenth assignment that the plaintiff was a trespasser at the time of his injury; was there in violation of law, and thereby guilty of contributory negligence, the proximate cause of his injury. We will discuss these two assignments together.

We can see no practical distinction between the law in Illinois and this state. Railway v. Ollis, 37 Tex. Civ. App. 231, 83 S. W. 851, often cited and followed. The facts are somewhat similar, and the negligence is of the same character. The court has found the proximate cause of the negligence was the carelessness of appellant in so handling the cars as to cause the injury. The trial court found as a fact that appellant saw and knew of the perilous position of appellees, and by the exercise of proper care could have prevented the injury. The findings of fact were that appellant saw and knew of the perilous position of appellee; that

"the operatives and servants of defendant negligently, unlawfully, and willfully, at a rate of speed greatly in excess of the lawful rate of speed as established by the laws of Illinois, at such a time, placed, backed a freight train of defendant onto said side track, and bumped into said string of cars with such great and sudden violence as to knock the plaintiff off of said cars and injure him to the extent that he lost his right arm at the shoulder joint, the said negligence of defendant being the proximate cause of the injury, the plaintiff not being guilty of contributory negligence and not being a trespasser at the time of the damage in the sum of $3,000."

[9] Appellant has in no way challenged said findings made by the court, and they must be taken as true.

We find no reversible error assigned, overrule all the assignments, and affirm the judgment of the court.