THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

HORTON E. SCOTT.

*Opinion filed February 21, 1907.*

</div>

1. EMINENT DOMAIN—*when a verdict will be set aside as excessive.* A verdict in condemnation will be set aside as excessive, notwithstanding the amount is within the range of the testimony and the jury viewed the premises, if it appears the verdict is the result of passion or prejudice.

2. SAME—*it is error to allow proof of what petitioner paid for other land.* In a proceeding to condemn a strip of land through a farm for a railroad right of way, it is error to permit the defendant to prove what the petitioner had paid per acre for land for railroad purposes in the vicinity of the land sought to be taken.

3. SAME—*jury's view of premises is to be considered.* An instruction in a condemnation proceeding, where the jury viewed the premises, which requires the jury to fix the value of land taken and

the damage to the land not taken from a consideration of the evidence, is misleading, where it does not require them to consider their view of the premises as in the nature of evidence.

4. SAME—*when instruction as to damage from vibration, etc., should not be given.* An instruction in condemnation especially calling attention to damages by reason of noise, vibration, cinders and smoke should not be given, where the nearest of the defendant's buildings is four hundred and fifty feet from the defendant's railroad, and where it does not appear that the witnesses as to damages to land not taken based their testimony upon a consideration of such elements.

APPEAL from the County Court of Morgan county; the Hon. CHARLES A. BARNES, Judge, presiding.

KIRBY & WILSON, for appellant.

LAYMAN & MORRISSEY, and JOHN A. BELLATTI, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The appellant filed its petition in the county court of Morgan county to condemn a right of way across the farm of Horton E. Scott, the appellee. The appellee filed a cross-petition claiming damages to land not taken. The jury awarded the appellee for land taken the sum of $400 and $4150 damages to his land not taken, and the court, after overruling a motion for a new trial, rendered judgment on the verdict, and the appellant has prosecuted an appeal to this court.

The farm of the appellee contains one hundred and twenty acres of agricultural land fairly well improved, consisting of three forty-acre tracts lying north and south, abutting on the north and west upon public highways and situated four and one-half miles from the town of Franklin. The proposed right of way is seventy feet in width, and crosses the north half of the middle forty from north-east to south-west. The location of appellee's land, the situation

225—23

of the improvements thereon and the manner in which the same is crossed by appellant's railroad are shown by the following plat:

The railroad does not come nearer than four hundred and fifty feet to appellee's farm buildings, which are situated south of the strip taken, and the means of ingress and egress to and from the farm are not affected, and the north

and south forties are not touched by appellant's railroad. There are no deep cuts or fills on the strip taken, and the top of the rail of the track, when completed, at its highest point on the farm, will be three and one-half feet above the level of the ground. The farm was occupied by a tenant, and the middle forty at the time of the trial was in grass, the north forty in oats and the south forty in corn. The jury, under the direction of the court, viewed the premises.

The appellant urges three grounds of reversal in this court: First, the amount fixed by the jury as compensation and damages is excessive; second, the court erred in the admission of evidence; and third, the court misdirected the jury as to the law on behalf of the appellee.

The witnesses for the appellee fixed the value of the farm for agricultural purposes at from $175 to $200 per acre, while those for the appellant fixed its value for such purposes at from $135 to $150 per acre. The jury allowed appellee for the land taken $177 per acre. The witnesses for the appellee fixed the damage to the land not taken at from $40 to $50 per acre, while those for the appellant fixed the damage to the land not taken at from $20 to $35 per acre. The jury allowed the appellee as damage to the 117.74 acres not taken, $35.24 per acre. The witnesses for the appellee, while they conceded the land was worth only from $175 to $200 per acre for agricultural purposes, fixed the value of the strip taken for railroad purposes at from $300 to $1000 per acre, and then fixed the damage to the land not taken at from $40 to $50 per acre, thus clearly showing that in estimating the value of the land taken they took into consideration the damage to the remainder of the farm caused by the severance of the strip from the farm, and in fixing their estimate of the damage to the land not taken they again took into consideration the injury that would result from the severance of the farm by the strip taken, the effect of which was to include in their estimate of the amount which should be allowed the appellee, the damage

caused by the severance of the land, twice. To illustrate: Mr. McDavitt testified: "In the shape the railroad runs across the farm I should think $500 an acre would be a low figure. I think the location and operation of the railroad will diminish the rest of the farm $40 an acre. * * * The strip is not worth $500 an acre for agricultural purposes. It is worth that because it is a narrow, diagonal strip,—injurious of the whole place. I would not buy a strip of that kind. I would not have it at any price. It is worth $500 because it is injurious to the whole place." And Mr. Keplinger testified: "I should think the market value of the 2.26 acres taken, in the shape the railroad is proposing to take it,—market value of it for any purpose to which it might be applied,—would be $300 per acre. The location and operation of the railroad on this land would diminish the value of the remainder $45 per acre. * * * The Scott farm is worth $160 per acre. The improvements are a little more extensive, and that, on a small place, would add to the value per acre. A small quantity out of a farm, I take it, is worth more than the whole farm together. The strip is not worth $300 per acre for any purpose to which I have known of the land being put heretofore." And Mr. Haynes testified: "I should think the 2.26 acres of land out of Mr. Scott's farm, in the way the railroad is proposing to take it, would be worth between $500 and $600 per acre. The taking of this strip for right of way would diminish the value of the rest of the land about $40 per acre. * * * I would not want to pay $500 or $600 per acre for the strip. It is worth that for railroad purposes. In fixing this value I take into consideration that the strip comes from the center of the farm. It is a question of damages." And Mr. Luken testified: "I think the 2.26 acres, in the shape the railroad is proposing to take it, is worth $600 per acre. The right of way for railroad purposes and the operating the railroad would diminish the value of the remainder of the land $50 per acre. * * *

If you want a piece of land and the other man don't want to sell, he has got to pay his price."

The method adopted by the witnesses for estimating the amount of the compensation and damage to the land admittedly was not the correct basis upon which to estimate the appellee's compensation and damage. While the jury did not follow the view of the witnesses, excerpts of whose testimony have been quoted, they did allow appellee two dollars per acre more for the land taken than he testified it was worth per acre; that is, he testified it was worth $175 per acre and the jury allowed him $177 per acre, which demonstrated that the jury, in fixing the value of appellee's land taken, were more liberal toward the appellee than he was toward himself. The principal elements of damage to the land not taken, as shown by the evidence, were the cutting of the farm into two parts, leaving the tracts of land upon each side of the railroad in irregular form, and the land upon the north side of the railroad track inaccessible to the farm buildings, which were located upon the south side of the track. The land not taken remained, after the road was built, as productive as before it was built, and we think the amount fixed by the jury as compensation and damage was excessive in view of all the evidence found in this record, and while a court of review will not ordinarily set aside a judgment in a condemnation proceeding on the ground the verdict was excessive, where the jury have viewed the premises and the amount is within the amount fixed by the several witnesses for the respective parties, where it appears that the verdict is the result of passion or prejudice it will be set aside. (*Groves and Sand Ridge Railroad Co.* v. *Herman,* 206 Ill. 34.) If the verdict appears to be excessive in any case, the court will carefully look into the record for the purpose of ascertaining whether the petitioner has had a fair and impartial trial and whether the excessive verdict was brought about by the erroneous action of the court in the conduct of the trial. In the case at bar the court per-

mitted the appellee to prove what the appellant and other railroads had paid per acre for land for railroad purposes in the vicinity of the land sought to be taken. This was clearly erroneous, under the repeated rulings of this court. *Peoria Gas Light and Coke Co.* v. *Peoria Terminal Railway Co.* 146 Ill. 372; *Lyon* v. *Hammond and Blue Island Railroad Co.* 167 id. 527.

The court, in the first and second instructions given on behalf of the appellee, informed the jury that they should fix the value of the land taken and the damage to the land not taken from the evidence, without requiring them to take into consideration the knowledge gained by them from their view of the premises. While the view of the jury is in the nature of evidence, the jury, from the instructions referred to, may have thought they were to be governed alone by the evidence of the witnesses in determining the value of the land taken and the damage to the land not taken, and that they were not authorized, in determining those questions, to take into consideration what they learned from a view of the premises.

In the seventh instruction the attention of the jury was especially called to the damage which the appellee may have sustained by reason of noise, vibration, smoke and cinders caused by the passing trains of the appellant. Instructions should always be based upon the evidence. The buildings of the appellee were situated four hundred and fifty feet south of the strip taken, and the abstract fails to show that any witness who testified in the case based his estimate of the damage to the appellee's land upon noise, vibration, smoke or cinders caused by appellant's passing trains, but, on the contrary, in several instances the appellee's witnesses based their opinion as to the damage sustained by appellee largely upon the danger arising from fire, or to children or live stock crossing appellant's railroad.

From a careful examination of this record we are satisfied the compensation and damage allowed the appellee were

excessive, that the court erred in admitting proof of what the appellant and other railroads had paid per acre for land for railroad purposes in the vicinity of appellee's land, and in giving the first, second and seventh instructions offered by appellee.

The judgment of the county court of Morgan county will therefore be reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*