## HOUSTON INDEPENDENT SCHOOL DIST.
### v. READER et al.
### No. 9542.

Court of Civil Appeals of Texas. Galveston.
April 3, 1931.

Andrews, Streetman, Logue & Mobley and M. E. Kurth, all of Houston, for appellant.

Teagle & Benbow, of Houston, for appellees.

LANE, J.

This was a condemnation proceeding originating before the judge of the county court at law of Harris county, Tex., upon the petition of Houston independent school district against Jabe C. Reader and his wife, Georgia H. Reader, Mrs. Mary Ann Sweeney, a widow, Ira P. Jones, Jr., and Ira P. Jones, Sr., as trustee, Bose Reader and J. F. Richardson, seeking to condemn a tract of land known as Reader's subdivision of Oakland terrace, First addition to the city of Houston, Harris county, Tex., according to dedication map recorded in volume 655, page 73, of the Deed Records of Harris county, Tex., containing approximately five acres.

It was alleged that defendant Jabe C. Reader and his wife, Georgia H. Reader, claimed to own and be possessed of the fee-simple title to said property; that the defendant Mrs. Mary Ann Sweeney claimed to own a valid lien against the same, and that the defendant Bose Reader likewise claimed to own a valid lien against such property; likewise that the defendant Ira P. Jones, Jr., claimed to own a valid lien against part of said property, and that the defendant Ira P. Jones, Sr., was the trustee named in a deed of trust executed for the benefit of the said Ira P. Jones, Jr., and that the said J. F. Richardson claimed to own a portion of said property; the exact nature and extent of the claim of said Richardson being unknown to petitioner.

Petition for condemnation was filed with the judge of the county court at law of Harris county, Tex., on April 17, 1928, and Messrs. E. L. Crain, A. E. Devine, and W. H. Taylor were appointed commissioners and duly qualified.

After notice duly served on each of the defendants, upon a hearing on May 2, 1928, the commissioners assessed the sum of $13,600 as the total damages and price to be paid by petitioner for said property, ordering that out of said sum there first be paid to the defendant Mrs. Mary Ann Sweeney, in satisfaction of her lien, the sum of $8,047.48, with inter-

est on $7,000 at the rate of 7½ per cent. per annum from April 28, 1928, and ordering next paid from said amount the sum of $1,500, with interest thereon from the 28th day of April, 1926, at the rate of 8 per cent. per annum, to the defendant Bose Reader, and the balance of said award to be paid to the defendant Jabe C. Reader. All costs were awarded against the defendant Jabe C. Reader.

Thereafter, in due time, the defendants Jabe C. Reader and wife, Georgia H. Reader, Mrs. Mary Ann Sweeney, and Bose Reader filed their objections and oppositions to such award, setting up that the amount awarded as damages was wholly insufficient and below the market value of said property.

After the award was made by the commissioners, petitioner, Houston independent school district, on May 17, 1928, deposited in the registry of the court the sum of $27,200, and took possession of said property. No appeal whatsoever was filed by the condemnor from the award of the commissioners.

Thereafter the case was duly reached and tried and submitted to a jury on one special issue, such issue being: "What was the reasonable cash market value of the land described in plaintiff's petition on May 17, 1928?" To this issue the jury answered: "Twenty-four thousand eight hundred dollars," and upon such verdict judgment was rendered by the court in favor of the defendants Jabe C. Reader and wife, Georgia H. Reader, jointly, in the sum of $24,800, with interest on the full amount of said sum from the 17th day of May, 1928, at the rate of 6 per cent. per annum, said judgment providing that there should first be deducted from said amount the sum of $70.38, being delinquent taxes against the property at the time of its appropriation, and, after such deduction for taxes, there should be next paid to the defendant Mary Ann Sweeney from said amount so awarded the sum of $9,387.01, with interest on $7,000 of said sum at the rate of 7½ per cent. per annum from March 20, 1930; that there should next be paid to the defendant Bose Reader out of said award the sum of $1,500 with interest at the rate of 8 per cent. per annum from April 28, 1926, and that there should next be paid out of said award to defendant J. F. Richardson the sum of $608.43, with interest at the rate of 10 per cent. per annum from March 20, 1930; the balance of said award to be paid to defendants Jabe C. Reader and wife, Georgia H. Reader, jointly.

The school district has appealed.

By appellant's propositions 1 to 5, inclusive, it is contended substantially that, since it was an undisputed fact that the two tracts of land, that is, the certain five-acre tract owned by Luther Davis in the same locality and adjoining the five-acre tract owned by appellee which was sought to be condemned, were of the same value, the court erred in

not allowing Luther Davis, called as a witness by appellant to prove the reasonable market value of the land sought to be condemned, to testify as to the price at which he sold his tract of land to appellant, and that the court also erred in excluding from the evidence the deed by which Davis conveyed his land to appellant.

Though recognizing the fact that appellant was the condemning party at the time Luther Davis conveyed his land to it, and recognizing the fact that it has been held by many courts that evidence as to what a condemning party paid for adjoining land is not admissible in a suit to condemn land or lands in the immediate vicinity appellant nevertheless contends that the general rule in Texas is. that actual sales of other similar lands in the vicinity made at the time at which the value of the land to be taken by condemnation is to be determined are admissible in evidence in arriving at the compensation to be awarded to the owner, citing Sullivan v. Missouri,. K. & T. R. Co., 29 Tex. Civ. App. 429, 68 S. W. 745.

Appellant further contends, however, that, if the general rule were otherwise, and though the price paid Davis were fixed by arbitration, in view of the fact that Davis had qualified as an expert on values of land in the vicinity in question, and that he would have testified, if permitted so to do, that at the time he conveyed his land to appellant he considered the price paid therefor to be the reasonable cash market value of the same, and that he was satisfied to take it, and that he would have sold the land to any one else for the same price, it took this case out of the rule insisted upon by appellee in this case, in that the testimony which would have been given by Davis would have shown that the sale made by him was a voluntary sale, uninfluenced by the fact that his property might be taken under condemnation proceedings if he refused to sell.

■ We are not prepared to hold that the court erred in rejecting that part of the testimony of Luther Davis, the rejection of which is complained of by·appellant, nor in refusing to permit the introduction of the deed offered to prove value. We think the weight of authority is to the effect that evidence as to what a condemning party paid for adjoining land after condemnation proceedings had begun is not admissible in a suit to condemn other and adjoining land or lands in the same vicinity. 10 R. C. L. p. 220, § 188; Mills on Eminent Domain, § 170; Lewis on Eminent Domain, § 667; U. S. v. Freeman (D. C.) 113 F. 370; U. S. v. Beatty (D. C.) 198 F. 284; Spring Valley Water-Works v. Drinkhouse, 92 Cal. 528, 28 P. 681; Brunswick & A. R. Co. v. McLaren, 47 Ga. 546; Chicago, etc., R. Co. v. Scott, 225 Ill. 352, 80 N. E. 404;

Coate v. Memphis R. R. Terminal Co., 120 Tenn. 525, 111 S. W. 923; Howard v. Providence, 6 R. I. 514; Peoria Gaslight & Coke Co. v. Peoria Terminal R. Co., 146 Ill. 372, 34 N. E. 550, 21 L. R. A. 373.

Decisions of many states, in addition to those cited, declare the rule to be that the evidence referred to above is inadmissible in condemnation proceedings. If, however, testimony of a seller to a condemning party to the effect that such sale was voluntarily made would render admissible his testimony that he voluntarily sold for a stated price, still we are not prepared to hold that the court erred in rejecting Davis' testimony as to what price he sold his land to appellant, for this: His testimony was so conflicting and confused as to whether his sale was voluntary that it was up to the court to·determine what the effect of his testimony was with reference to that matter, and, as the court rejected the evidence, we may reasonably presume that the court· concluded from such testimony as a whole that the sale was not voluntarily made, and hence evidence of what the witness received for his land was inadmissible as tending to prove the value of land adjoining his land.

■ If, however, it be conceded that the rejected testimony was admissible, and that it was erroneously rejected, such rejection would not constitute reversible error, for this: The general rule in all jurisdictions is that evidence of the value of the abutting property is admissible, in cases such as the present one, only as it tends to show the market value of the property, and thereby shows the value of adjoining property of like kind. So the rejected testimony was only valuable, if at all, as it would tend to show what value Davis placed on his property, which was shown to be of the same value as appellee's property taken by the appellant. The value placed by Davis on the land sold by him and that of appellee's taken by appellant was shown by the testimony of Davis admitted in evidence. He was permitted to and he did testify, after qualifying as an expert on value of lands in the vicinity in question, that the two five-acre tracts, one owned by him and the other by appellee, "were virtually located practically the same. They were adjoining, and they were the same sized tracts, and I·couldn't see much difference in the two tracts."

He also testified as follows: "I sold my property in April, 1928, and as to the reasonable cash market value of Mr. Reader's property on May 17th, following my sale, I don't know as it would be increased any in value in that length of time. In my opinion, the value of Mr. Reader's property at that time was $13,600.00."

From the testimony given by Davis, it is clearly apparent that the jury was permitted

to receive his estimate of the value of appellee's land at the time it was taken by appellant. It follows that the rejected evidence would have added no strength to Davis' estimate of the value of the respective tracts, one owned by him and the other by appellee. Such being true, the error of the court, if any, in rejecting the evidence, the rejection of which appellant complains, was harmless, and constitutes no cause for reversal of the judgment.

■■ It is shown that Luther Davis was permitted to testify that he had conveyed five acres of land to appellant, but was not permitted to tell what the consideration paid for such conveyance was, nor to testify that appellant wrote him a letter threatening to condemn his land and take it from him.

Appellant complains in the motion for new trial of the argument made by counsel for appellee, wherein he stated: "Mr. Kurth has told you that the witness, Luther Davis, has sold his property to the School Board and Mr. Kurth stresses this in his argument, but Mr. Kurth has failed to tell you that Mr. Davis did not sell his land voluntarily but only after he, said Davis, had received a letter from the Board of Education of said Houston Independent School District advising him that if he didn't sell his said land to the School District that the School Board would condemn his land."

Exception was taken to such argument at the time it was made.

The only ground urged in appellant's bill of exception complaining of the argument is that there was no evidence before the jury that Davis had received a letter from appellant threatening to condemn his land, and that the argument made was highly prejudicial, and calculated to influence the jury adversely to appellant.

The bill shows that counsel for appellant immediately requested the court to instruct the jury that no such letter was in evidence, and that they should not consider counsel's remarks relative to the same; that the court, after hearing the contention of counsel for appellee that there was evidence before the jury showing that such letter had been received by Davis, instructed the jury that no such facts were in evidence, and that they should not consider the remarks of counsel complained of, and thereupon counsel for appellee requested the jury not to consider his remarks.

Appellee objects to our considering appellant's complaint of counsel's argument, in that the bill of exceptions mentioned is insufficient to present the question of improper argument, because it does not show that there was no argument on the part of opposing counsel to provoke the argument complained of.

We think appellee's objection to the consideration of appellant's complaint of counsel's argument should be sustained.

In Texas Employers' Ins. Association v. Heuer (Tex. Civ. App.) 10 S.W.(2d) 756, the court holds that, when a bill of exception complaining of the argument of opposing counsel fails to show that there was no argument on the part of counsel complaining to provoke the argument of opposing counsel, the bill should not be considered. The same holding is made in Travelers' Ins. Co. v. Peters (Tex. Civ. App.) 3 S.W.(2d) 568; Kansas City, M. & O. Ry. Co. v. West (Tex. Civ. App.) 149 S. W. 206, and in many other cases.

If, however, we should consider appellant's complaint of counsel's argument, we would overrule the complaint made for two reasons: First, because the statement made by counsel for appellee to the jury, shown by the bill of exception, to the effect that Luther Davis was induced to sell his land to appellant only after he had received a letter from appellant advising him that, if he would not voluntarily sell, appellant would take his land by condemnation proceedings, could not reasonably have worked an injury to appellant before the jury, in view of the fact that Davis had positively testified that the land of appellee, which was shown by all the evidence to be of the same value as that sold by him to appellant, was worth only $13,600; and, second, because the remarks of opposing counsel were by him withdrawn from the consideration of the jury upon his request that they should not consider same, and because the court, upon the request of counsel for appellant, in effect instructed the jury that the remarks had no evidence to support them, and that they should not consider them in arriving at their verdict. In view of the facts stated, it is not at all reasonable that such remarks in anywise affected the jury in arriving at their verdict.

■ ■ By appellant's eighth and ninth propositions it is contended, first, that appellees Jabe Reader and wife made no prayer for interest, and therefore the court erred in rendering judgment in their favor for any interest whatever accruing prior to the date of the judgment; and, second, that, even if the allowance of any interest whatsoever was proper, appellees were not entitled to a recovery of interest on that part of the judgment representing the difference between the amount found by the jury as damages and the amount of damages as fixed by the commissioners, because appellant had, on May 17, 1928, deposited in the registry of the court double the award of the commissioners, such deposit being equivalent to a tender of the amount awarded, and therefore no interest would accrue thereon; wherefore the allowance by the court of interest on that portion of the judgment representing the amount

awarded by the commissioners and covered by the deposit is to that extent erroneous.

Appellant's contention that the court erred in awarding to appellees a recovery of interest to accrue prior to the rendition of the judgment, in that there was no prayer authorizing such an award, cannot be sustained. Dallas, etc., Ry. Co. v. Day, 3 Tex. Civ. App. 353, 22 S. W. 538, 540; Wichita Falls & W. Ry. Co., v. Wyrick (Tex. Civ. App.) 158 S. W. 570; Atchison, etc., Ry. Co. v. Smythe, 55 Tex. Civ. App. 557, 119 S. W. 892; Hancock v. Haile (Tex. Civ. App.) 171 S. W. 1053; 8 R. C. L. p. 538, § 90.

In condemnation proceedings, the defendant owner is not required to file any pleading, and his prayer for general relief would entitle him to interest from the date the condemnor appropriates such owner's land to its own exclusive use.

In 20 Corpus Juris, p. 807, § 252, it is said:

"According to the great weight of authority, where payment of compensation does not accompany the taking of land for public use, but is postponed to a later period, the land owner is entitled to interest, to be computed from the time of the taking, or, what amounts to the same thing, damages in the nature of interest for delay in payment of the compensation." Citing many authorities in support of such statement.

And on page 811 of the same volume it is said:

"Where an appeal from the award is taken by the owner, and on trial a larger sum is awarded, he is entitled to interest on the sum found due from the date of the original award, or the time of appropriation." (See footnotes.)

In Dallas, etc., Ry. Co. v. Day, supra, it is said: "The court did not err in refusing to require the defendant Day to particularize in writing the damage claimed by him before going into the trial. The statute does not require written pleading in this character of proceeding, other than the application filed by the plaintiff as a basis for the condemnation. The law regulates what can and what cannot be considered as items of damage, and there is no necessity for any greater particularity."

In Wichita Falls & W. Ry. Co. v. Wyrick, supra, it is said: "It was not necessary for appellee to allege the specific damages sustained; the law fixed his damages, rather the measure of his damages, and the things for which he could recover." Citing the Day Case, and Choctaw, O. & T. Railway Co. v. True, 35 Tex. Civ. App. 309, 80 S. W. 120.

In appellees' objection to the award of the commissioners, they alleged as follows: "That the sum awarded therein as damages for such taking is wholly insufficient in that the same is far below the market value of said property, and because it does not take into account the value of the improvements made by the defendant Jabe C. Reader to said land, and because the same is grossly inadequate."

They prayed for general relief as they might be entitled to, either in law or in equity.

We overrule appellant's contention that, if appellees were entitled to any interest whatsoever, they would be entitled to interest only on the amount awarded by the judgment over and above that awarded by the commissioners. Alloway v. Nashville, 88 Tenn. 510, 13 S. W. 123, 8 L. R. A. 123.

When an owner's land is taken, he is entitled to statutory interest from the date of the actual appropriation of his property. The deposit made in this case by appellant into the registry of the court was a prerequisite to its taking possession of appellees' land, and it was in no sense a tender of any part thereof to appellees. It was simply a deposit made under statutory provisions to give appellant the right to take immediate possession of and use of the land, and was not a deposit any part of which appellees could withdraw without waiving their right to further compensation.

We are now brought to a consideration of the cross-assignments of appellees.

They insist that the court erred in rendering judgment in favor of appellant, vesting in it the fee title to the land taken, first, because the Constitution of this state does not provide for the condemnation of the fee in land, but only an easement or the right to use the same so long only as such land is put to public use; second, because the county court of Harris county was without jurisdiction to divest a citizen of the title to land; and, third, because the act of the Legislature which purports to confer upon the Houston independent school district the right to condemn the fee title to land is unconstitutional and void, same being in conflict with the Constitution, which vests jurisdiction in such matters in the district courts.

We overrule appellees' contentions. There is no inhibition in the Constitution against the condemnation of the fee-simple title to land for public use. In the absence of such inhibition, the Legislature has the right and power to provide by statute that the fee-simple title to land might be taken for public use, provided adequate compensation therefor is made. The clear implication of section 17 of article 1 of the Constitution is that the fee-simple title to property of a citizen may be taken for public use.

In Lewis' work on Eminent Domain (2d Ed.) § 277, p. 669, it is said: "In the absence of any constitutional restraint it rests with the Legislature to see what interest or estate in lands shall be taken for public use.

The whole matter thus being in the discretion of the Legislature it may authorize a fee to be taken, and necessarily may authorize any lesser estate or interest to be taken according to its views of the requirements of the grantee and the demands of the public good."

In 20 Corpus Juris, p. 533, § 22, it is said: "The right of eminent domain may be exercised either directly by the legislature, or through the medium of corporate bodies, or of individual enterprises, by virtue of the delegation of the power. The legislature, unless limited by constitutional restrictions, is entirely free to use its discretion in the selection of agents to exercise the power."

On page 626 of the same volume, § 122, it is said: "While a legislature may itself determine the necessity of exercising the power of eminent domain or of making the proposed improvement, it may, unless prohibited by the constitution, delegate this power of determination to public officers or boards or to private corporations vested with the power of eminent domain, and their determination is conclusive in the absence of fraud, bad faith, or clear abuse of discretion."

On page 1223 of the same volume, § 583, it is said: "It has also been held that where a municipality condemns land it acquires a fee unless a lesser estate or interest. is asked for in the application. The condemnor may be authorized to take a fee."

In the present case condemnor in its petition asked that the fee-simple title to the land be vested in condemnor.

■ Jurisdiction over condemnation proceedings whereby it is sought to take land for public use is expressly conferred by statute upon county courts without regard to the amount in controversy, and without regard as to whether such proceeding is to establish a servitude upon land or may involve a trial of title to land. Gulf, C. & S. F. Ry. Co. v. Jacques Tacquard, 3 Willson, Civ. Cas. Ct. App. § 141; Gulf, C. & S. F. Ry. Co. v. Lyons, 2 Willson, Civ. Cas. Ct. App. § 139.

By section 22, art. 5, of our Constitution, the Legislature is affirmatively and expressly empowered to increase, diminish, or change the civil and criminal jurisdiction of county courts by either general or local law.

By the express provisions of chapter 168 of the Acts of the Forty-First Legislature (1929), page 370, now article 1109c, Vernon's Annotated Civil Statutes, all independent school districts having 150 scholastics or more are given the express power to acquire the fee-simple title to real property for the purpose of supplying playgrounds, sites upon which to build schoolhouses, and such other purposes as may be necessary for such schools, within any such independent school districts.

■ The appellant having expressly prayed for the condemnation of the fee-simple title to the land in question, and the appellees having admitted, for the purpose of obtaining the right to open and close the arguments in the case, that appellant had the power and right to condemn the land sought to be condemned, and that all legal prerequisites to the proper condemnation of the land had been complied with, appellees precluded themselves from objecting to the adjudication of the fee-simple title to the land in question.

■ The Special Act of the Thirty-Eighth Legislature (1923) creating Houston independent school district (chapter 91), giving it the right of eminent domain, is not unconstitutional and void, for that the right of eminent domain is an inherent power of government, and is vested in the Legislature, and the Legislature has the right to delegate such power to municipal subdivisions.

Said special act creating Houston independent school district does not in any manner conflict with the general provisions of law, and, even if it did so conflict, the power to condemn the fee-simple title to the land in question was expressly conferred upon it by chapter 168 of the Acts of the Forty-First Legislature, p. 370.

Having reached the conclusion that the court committed no reversible error in the trial of the cause, the judgment is in all respects affirmed.

Affirmed.